**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-03157-PAB-STV

WENDELL H. STONE COMPANY, INC., individually and on behalf of all others similarly situated,

    Plaintiff,

v.

FIVE STAR ADVERTISING, LLC, and
JOHNNY LEE,

    Defendants.

---

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

**I.    INTRODUCTION**

This case challenges Defendants Five Star Advertising, LLC's ("Five Star") and Johnny Lee's ("Lee", collectively with Five Star, "Defendants") widespread violations of the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, *et seq.* ("JFPA" or Act"), specifically Defendants' practice of sending unsolicited fax advertisements. Plaintiff filed its Complaint on November 6, 2019, and served Five Star and Lee on December 12, 2019. To date, neither Five Star nor Lee has appeared, answered, or responded to Complaint in any fashion. On March 17, 2021, this Court granted Plaintiff's motion for class certification and certified a Class in accordance with Rule 23(b)(2). Plaintiff now moves for a default judgment on behalf of itself and the Class.

Default judgment is warranted here. First, this Court has both subject matter jurisdiction and personal jurisdiction over the Defendants. The case arises under the JFPA, a federal statute,

1

and thus federal question jurisdiction exists. The Court also has personal jurisdiction over the Defendants because they reside in this State and have been properly served.

Plaintiff also pleads a claim for relief. Defendants sent unsolicited faxes to individuals *en masse* to market their products and services. No exceptions to the JFPA apply here: Defendants have no prior existing business relationship and none of the faxes contains proper opt-out language. Further, all of the faxes were sent to the Class in the same manner and without consent.

Lastly, the damages are reasonable, and judgment should be entered in favor of Plaintiff and the Class. Plaintiff seeks the maximum statutory damages on behalf of itself. Further, Plaintiff seeks an injunction to ensure that Defendants comply with the TCPA/JFPA on a prospective basis on behalf of the Class. Additionally, Plaintiff seeks to recover its attorneys' fees and costs incurred in the prosecution of this action.

Accordingly, the Court should enter judgment against Defendants Five Star and Lee and in favor of Plaintiff and the Class.

## II.     LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

Five Star Advertising, LLC is a limited liability company organized and existing under the laws of the State of Colorado. (Compl. ¶ 2.) Defendant Lee is an individual residing in the State of Colorado. (*Id.* ¶ 3.) Lee is the only registered member of Five Star. (*Id.* ¶ 28.) To market their products and services (namely clothing and apparel), Defendants sent unsolicited fax advertisements *en masse*—a plain violation of the JFPA. (*Id.* ¶¶ 8-9.) In sending the faxes at issue, Defendants failed to include any language informing consumers of their right to opt-out of receiving future faxes. (*Id.* ¶ 27; *see* "Five Star Fax," a true and accurate copy of which is attached as Exhibit A to the Complaint.) Defendants do not have any prior established business

relationship with the persons they faxed. (*Id.* ¶ 23.)

In Plaintiff's case, it received at least one fax from Defendants that advertised Defendants' apparel. (Compl. ¶¶ 18-22; *see also* Five Star Fax.) Stone never consented to receive any faxes from Defendants, and Stone has no prior business relationship or dealings with Defendants. (*Id.* ¶ 23.) Further, absent any proper opt-out mechanism, Stone is at the mercy of Defendants regarding the future receipt of faxes. (*Id.* ¶¶ 25-27.)

Plaintiff filed its Class Action Complaint on November 6, 2019. (Dkt. 1.) On December 12, 2019, Plaintiff obtained service on Five Star, via its agent for service of process (dkt. 12), as well as on Defendant Lee personally (dkt. 13), placing the Defendants' joint deadline to answer or otherwise plead on January 2, 2020. To date, Defendants have failed to appear, respond, or contact Plaintiff's counsel. On January 29, 2020, the Clerk of Court entered default against Five Star. (Dkt. 17.) On February 5, 2020, the Clerk of Court entered default against Lee. (Dkt. 20.) Following the entry of default, Plaintiff filed a motion for class certification. (Dkt. 21.)

On March 17, 2021, this Court issued an Order granting Plaintiff's motion for class certification with respect to its proposed Rule 23(b)(2) class (dkt. 23 at pg. 16) and denying without prejudice Plaintiff's proposed Rule 23(b)(3) class citing the need for an administratively feasible method to ascertain class members (*id.* at pg. 7). The Court defined the Rule 23(b)(2) Class as follows:

> All persons who (1) on or after November 6, 2015, (2) were sent, by Defendants or on Defendants' behalf, (3) a telephone facsimile message substantially similar to Exhibit A, (4) from whom Defendants claim they obtained prior express permission or invitation to send those faxes in the same manner as Defendants claim they obtained prior express consent to fax the Plaintiff.

(*Id.* at pg. 16.)

Following the decision on class certification, Plaintiff sought leave to conduct discovery to locate records to identify class members. (Dkt. 24.) The Court granted leave to conduct

3

discovery, and Plaintiff issued a subpoena directed to Onvoy, LLC d/b/a Inteliquent ("Onvoy"), which sought to identify the telephone service provider associated with the Defendants' fax number. (Declaration of Taylor T. Smith ("Smith Decl.") ¶ 7, attached hereto as Ex. A.) On June 2, 2021, Onvoy responded to the subpoena and identified NetstaffHR, Inc. ("NetstaffHR") as the telephone service provider. (*Id.* ¶ 8.)

On June 3, 2021, Plaintiff issued a subpoena directed to NetstaffHR to obtain, inter alia, the fax transmission records. (*Id.* ¶ 9.) NetstaffHR responded to the subpoena and confirmed that it possessed an account that was connected to the subject fax number and the Defendants. (*Id.* ¶ 10.) Unfortunately, NetstaffHR, Inc. informed Plaintiff that it no longer possesses any fax transmission records relating to the account. (*Id.*.)

Based on these facts, the Court should enter default judgment in favor of Plaintiff and against Defendants Five Star and Lee.

## III. ARGUMENT

The Court should enter default judgment in Plaintiff's favor based on the well-pleaded allegations. Plaintiff has complied with the procedural prerequisites for default judgment, and the default judgment analysis weighs heavily in Plaintiff's favor. As such, and as explained further below, default judgment is warranted here.

### A. The Court Possesses Jurisdiction Over Both Defendants And The Subject Matter Of This Case.

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). Courts clearly possess personal jurisdiction over resident individuals as well as corporations that are either incorporated in the forum state or who maintain their principal place

of business there. *See CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1094 (D. Colo. 2014) ("Jenkins is subject to personal jurisdiction in this court as a resident of Colorado."); *J.L. v. Best W. Int'l, Inc.*, No. 19-CV-03713-PAB-STV, 2021 WL 719853, at *12 (D. Colo. Feb. 24, 2021) ("The 'paradigm' forums in which a corporate defendant is 'at home,' ... are the corporation's place of incorporation and its principal place of business."). Further, federal courts possess subject matter jurisdiction over claims that arise under the TCPA pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 387 (2012).

Here, both Five Star and Lee are residents of the State of Colorado. Five Star is a Colorado limited liability company with its principal place of business located in Castle Rock, Colorado. (Compl. ¶ 2.) Lee is also a resident of Castle Rock, Colorado. (*Id.* ¶ 3.) Nothing more is needed to establish personal jurisdiction. Further, given that Plaintiff alleges violations of the TCPA, a federal statute, this Court properly possesses subject matter jurisdiction over the claims asserted. Accordingly, the Court has jurisdiction over both the parties and the subject matter of the case.

      **B.**      **The Unchallenged Facts Establish A Cause Of Action Against The Defendants For A Violation Of The TCPA.**

After the entry of default, the Court must determine "whether the well-pleaded factual allegations in the Complaint and any attendant affidavits or exhibits support judgment on the claims against the defendants." *Acosta v. Finishing Pros., LLC*, No. 18-CV-00978-RPM-NYW, 2018 WL 6603641, at *2 (D. Colo. Nov. 20, 2018) (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd*, No. 14-CV-02133-REB-KLM, 2015 WL 4237950, at *5 (D. Colo. 2015)). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id*. (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). However,

5

"only facts well pleaded" are admitted as true. *Malibu Media, LLC v. Ling*, 80 F.Supp.3d 1231, 1239 (D. Colo. 2015).

Relevant here, the JFPA makes it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement…" 47 U.S.C. § 227(b)(1)(C). "Unsolicited advertisement" means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Hence, to prevail on a claim for a violation of the JFPA, "the plaintiff must specifically point to evidence in the record sufficient to establish that: (1) the defendant utilized a 'telephone facsimile machine' to send 'one or more faxes;' (2) that the transmissions constituted ''advertisements;'' and (3) that the defendant sent the transmissions without the recipient's consent, absent application of one of the statutory exceptions." *City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 296 F.R.D. 299, 323 (D.N.J. 2013).

Further, liability under the JFPA is not limited to just the entity that sent the faxes. Rather, an officer of a corporation may be personally liable when they "directly participated in or authorized the statutory violation, even though acting on behalf of the corporation[.]" *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F. Supp. 2d 1316, 1321 (D. Wyo. 2011) (citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 (D. Md. 2011) (finding that officers can be personally liable when they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." (collecting cases)). Any other conclusion would allow individual defendants "to simply dissolve" the existing corporation, and "set up a new shell corporation, and repeat their conduct." *Versteeg*, 775 F. Supp. 2d at 1321 (quoting *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D. Tex. 2001)).

Here, Plaintiff sufficiently alleges that Defendants violated the JFPA by sending unsolicited facsimile advertisements. That is, on October 1, 2019, Defendants transmitted a fax advertisement to Plaintiff using a facsimile machine. (Compl. ¶¶ 18, 57; *see also* Ex. A to Compl.) The fax advertised the availability of Defendants' clothing and apparel. (*See* Ex. A to Compl.) Plaintiff further alleges that Defendants sent the same fax advertisements to a Class of persons in the same manner. (Comp. ¶¶ 8, 16, 24.) All of the faxes were sent without any prior express invitation or permission and none of the exceptions to the JFPA apply. (*Id.* ¶¶ 8, 24, 47.) Additionally, Plaintiff alleges that Defendant Lee (Five Star's only registered member) controlled the implementation of any and all policies and procedures relating to faxing. (*Id.* ¶¶ 28-31.) Plaintiff further alleged that Lee drafted the fax at issue and was directly involved in its transmission to Plaintiff and the Class. (*Id.* ¶ 32.) Together, the allegations establish a cause of action against both Defendants for a violation of the JFPA.

Accordingly, the Court should find that Plaintiff's well-pleaded allegations establish a claim against Defendants for a violation of the JFPA.

### C. The Damages Sought Are Reasonable And Should Be Awarded.

Where the damages sought are not sum certain, the Court is required to ascertain the amount of damages. *IMM, LLC v. Plankk Techs. Inc.*, No. 19-CV-02629-CMA, 2020 WL 902320, at *4 (D. Colo. Feb. 25, 2020). To ascertain damages, courts "'may conduct such hearings or order such references as it deems necessary' in order to 'determine the amount of damages.'" *Id.* However, a court "may enter a default judgment without a hearing when . . . the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.* (citing *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); *Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012)). Instead, "the court may rely on detailed

7

affidavits or documentary evidence to determine the appropriate sum for default judgment." *Mohon v. Nat'l Cong. of Emps., Inc.*, No. 119CV00652KWRJHR, 2021 WL 601816, at *2 (D.N.M. Feb. 16, 2021)

As explained next, the Court should award Plaintiff statutory damages for his individual claim, enter a permanent injunction requiring Defendants to cease all fax marketing, and award Plaintiff its costs and reasonable attorneys' fees incurred in the prosecution of this action.

### 1. The Court should award Plaintiff $1,500 in damages.

The TCPA permits the recovery of actual damages or $500, whichever is greater. 47 U.S.C. § 227(b)(3). However, when the defendant acted willfully or knowingly, the damages may be trebled. *Id.* Courts routinely find that trebled damages for willful violations to be reasonable in connection with a default judgment. *See Georgopulous v. PPM Cap., Inc.*, No. 19-CV-00347-DDD-STV, 2019 WL 6065617, at *11 (D. Colo. Oct. 21, 2019), *report and recommendation adopted*, No. 19-CV-00347-DDD-STV, 2019 WL 6053333 (D. Colo. Nov. 15, 2019) (awarding trebled damages in connection with a default judgment for willful violations of the TCPA); *Craig Cunningham v. Technologic USA, Inc.*, No. 19-CV-00231-F, 2020 WL 10356245, at *7 (D. Wyo. June 17, 2020) (awarding default damages for willful violations of the TCPA); *Ziegler v. Allied Com. Roofing, Inc.*, No. 13-CV-02638 FB JMA, 2014 WL 4437316, at *3 (E.D.N.Y. Sept. 9, 2014) (trebling damages in connection with a default judgment for TCPA violations); *Ebert v. Nat'l Brokers of Am., Inc.*, No. 2:17-CV-1983-KJM-EFB, 2018 WL 2440679, at *3 (E.D. Cal. May 31, 2018) (awarding $1,500 per call in default damages for TCPA violations).

Here, Plaintiff requests that the Court enter the maximum $1,500 statutory damages for the unlawful fax. Plaintiff never provided any consent to receive the fax nor did it have any

8

relationship with either defendant. Nevertheless, Defendants unlawfully solicited Plaintiff to purchase its products and services via fax. Further, Plaintiff alleged that Defendants either knew or should have known that its fax advertisements violated the JFPA. (Compl. ¶ 51.) And Defendants failed to include proper opt-out language on their faxes to apprise the recipients of their right to opt-out of future transmissions. (*Id.* ¶ 27; *see also* Ex. A to Compl.) Together, these unchallenged facts establish a willful violation of the JFPA.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff $1,500, the maximum statutory damages under the JFPA.

### 2. The Court should also enjoin Defendants from future JFPA violations.

In addition to its claim for monetary damages, Plaintiff, on behalf of itself and the Class, seeks an injunction requiring Defendants to cease their unlawful faxing practices.

Under the TCPA, a court may grant injunctive relief. 47 U.S.C. §§ 227(b)(3)(A); *see also Chen Wang v. Def. Tax Grp. Inc.*, No. CV2001193CJCMRWX, 2020 WL 6786197, at *3 (C.D. Cal. Oct. 8, 2020) ("Injunctive relief is available under the TCPA."). To obtain a permanent injunction, plaintiff must establish: "(1) success on the merits; (2) irreparable injury if the injunction does not issue; (3) the threatened injury to it outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction will not be adverse to the public interest." *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1105 (D. Colo. 2014) (citations omitted); *see also Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014). Courts may issue injunctions as part of default judgments. *Priority Recs. LLC v. Padilla*, No. CV 07-920 WJ/LFG, 2008 WL 11451598, at *1 (D.N.M. Mar. 19, 2008). As explained next, each of these factors is met here.

First, as set forth in section B, *supra*, Plaintiff has established that its well-pleaded

allegations state a claim for relief. Nothing more is needed to established actual success on the merits. *See AMG Nat'l Corp. v. Wright*, No. 20-CV-02857-PAB-KLM, 2021 WL 4170459, at *12 (D. Colo. Sept. 14, 2021) ("Plaintiffs are entitled to default judgment against Mr. Wright on their breach of contract, defamation, and conspiracy claims, and accordingly meet the element of actual success on the merits." (collecting cases)); *see also Oakley, Inc. v. Ly*, No. 20-CV-1414-WJM-MEH, 2021 WL 3206320, at *3 (D. Colo. July 29, 2021). Accordingly, the first factor is satisfied.

Second, the Class would suffer irreparable injury absent an injunction. Irreparable harm exists "when the court would be unable to grant an effective remedy after a full trial because such damages would be inadequate and difficult to ascertain." *Hernandez v. Grisham*, 494 F. Supp. 3d 1044, 1121 (D.N.M. 2020). Given the current situation that the Court is faced with (non-appearing defendants and a lack of class records), an injunction is necessary to protect Plaintiff and the Class. Indeed, absent a court order, Defendants will be free to continue blasting out thousands of faxes to class members' fax machines, which are left on and ready to receive communications.

Moreover, without any means to prosecute an action on a class basis, class members would be left without any adequate remedy. Instead, each member would be forced to file individual claims for damages for $500 or $1,500. Because of the small damages available to class members, courts agree that class actions are necessary to adequately redress TCPA violations. *See Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to

bring their claims."); *Braver v. Northstar Alarm Servs., L*LC, 329 F.R.D. 320, 333 (W.D. Okla. 2018) (recognizing the TCPA's individual damages as insufficient and explaining that a "class action avoids this problem by aggregating what would otherwise be a series of "too small" potential individual recoveries." (citation omitted)). In short, the Court should find that the Class would face irreparable injury absent a permanent injunction.

The third factor "weighs the plaintiffs' injury against the harm that an injunction might impose on the defendant" *Roman Catholic Archdiocese of Kansas City in Kansas v. City of Mission Woods*, 385 F.Supp.3d 1171, 1176 (D. Kansas, May 10, 2019). Here, Defendants face no harm if the proposed injunction were to be entered. That is, the injunction will put an end to Defendants repeated violations of the JFPA. As such, the only harm that Defendants could potentially face is the inability to continue to violate federal law. Put simply, compliance with federal law is not harm.

As to the fourth element, an injunction would serve the public interest. Indeed, the proposed injunction is tailored to ensure that Defendants comply with federal law on a prospective basis. As such, the injunction will not be adverse to the public interest. If anything, an injunction enforcing compliance with a federal law will further the public interest. *See Broad. Music, Inc. v. George Moore Enterprises, Inc.*, 184 F. Supp. 3d 166, 171 (W.D. Pa. 2016) ("an injunction which enforces federal copyright laws, and protects the rights and responsibilities defined by them, is by definition in the public interest."); *see also US Fax Law Center, Inc. v. iHire, Inc.*, 362 F.Supp.2d 1248, 1253 (D. Colo. 2005) ("Courts considering the TCPA have uniformly concluded it was enacted to address public harm.").

As a final point, this case is not a "one-off". That is, courts across the country have issued injunctions, which permanently enjoin defendants from violating the TCPA in the future. *See,*

*e.g., Virginia ex rel. Jagdmann v. Real Time Int'l, Inc.*, No. 4:04CV125, 2005 WL 1162937, at *3-4 (E.D. Va. Apr. 26, 2005) (issuing a permanent injunction requiring compliance with the TCPA); *Margulis v. Surrey Vacation Resorts, Inc.*, No. 4:14-CV-01131-JAR, 2017 WL 2242555, at *2 (E.D. Mo. May 23, 2017) ("The Court will grant Plaintiff's request to enjoin Defendant from making unsolicited calls to Plaintiff and direct Defendant to comply with the TCPA and corresponding FCC regulations in the future."); *Martin v. PPP, Inc.*, 719 F. Supp. 2d 967, 977 (N.D. Ill. 2010) ("an injunction will be entered prohibiting Fidelity from placing future calls to cellular phones using an ATDS and/or prerecorded voice messages in violation of the TCPA.").

As such, Plaintiff seeks the following injunction to ensure that Defendants comply with the JFPA on a prospective basis:

- Defendants, and their employees, agents, representatives, contractors, and affiliates acting on behalf of Defendants, shall not send or cause to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, any facsimile advertisement to either Plaintiff or any class member as defined in the Court's March 17, 2021 Order regarding class certification (dkt. 23), unless Defendants possess prior written invitation or permission from the fax recipient.

- Defendants, and their employees, agents, representatives, contractors, and affiliates acting on behalf of Defendants, shall not send or cause to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, to any telephone facsimile machine any facsimile advertisement unless it contains the following opt-out notice clearly and conspicuously placed on the first page: "You have the right to request not to receive future faxes from Five Star Advertising, LLC, by calling [insert toll-free domestic telephone number] or sending a fax to [insert toll-free domestic fax number] at any time. Your opt-out request must include the fax number(s) to which You request that no future fax advertisements should be sent. Five Star Advertising, LLC's failure to comply with a valid opt-out request within 30-days is unlawful."

- In the event that Defendant Lee sends or causes to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, any fax advertisement on behalf of any other entity, partnership, limited liability company, corporation, sole proprietorship, or any other legal structure, Lee is hereby required to include the aforementioned opt-out notice on any fax advertisements. The notice

shall, however, include the correct name of any entity that is sending the advertisement.

- Defendants are also enjoined from entering, forming, organizing, or reorganizing into any partnership, corporation, sole proprietorship, or any other legal structure for the purpose of avoiding compliance with the terms of the Order and Judgment in this case.

Because an injunction is necessary to protect the interests of the Class, Plaintiff respectfully requests that the Court enter an injunction as outlined above.

### 3. The Court should also award Plaintiff its attorneys' fees and costs.

Lastly, Plaintiff requests that the Court issue an order requiring Defendants to pay Plaintiff's attorneys' fees and costs. While litigants are generally required to pay their own attorneys' fees, there are three exceptions to this general rule. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). Relevant here, one of the exceptions permits a court to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45–46 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-259 (1975)). There are two recognized forms of bad faith conduct: "(1) bad faith during the course of the litigation; or (2) bad faith in causing an action to be brought or defending an action through the assertion of a colorless defense." *Maxfield v. Henderson*, No. 4:19-CV-00106-DN, 2021 WL 3667261, at *4 (D. Utah Aug. 18, 2021)

"Bad faith during the course of litigation refers to actions that abuse the judicial process," including "actions that delay or disrupt litigation and actions that impede court orders." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)); *see also Hutto v. Finney*, 437 U.S. 678, 690, 98 S. Ct. 2565, 2573, 57 L. Ed. 2d 522 (1978) (A party also acts in bad faith by "delaying or disrupting the litigation or by hampering enforcement of a court order."). In certain contexts, courts have defined "bad faith" actions by delineating between intentional acts and negligent or inadvertent acts. *See, e.g., Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir.

13

1997); *Salas v. Brigham*, No. CIV 08-1184 JB RLP, 2010 WL 4322622, at *7 (D.N.M. Oct. 6, 2010); *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987). An award of attorneys' fees for bad faith conduct is discretionary and generally requires a finding of "subjective bad faith." *Maxfield v. Henderson*, No. 4:19-CV-00106-DN, 2021 WL 3667261, at *4 (D. Utah Aug. 18, 2021).

Here, Defendants' refusal to appear in this action cannot be seen anything other than an intentional act. Defendants were properly served by the Douglas County Sheriff. (Dkts. 12 & 13.) At the time of service, Defendant Lee personally accepted service for both himself and Five Star and provided his date of birth to the officer. (*Id.*) Despite proper service, Defendants have refused to appear in this lawsuit or reach out to Plaintiff's counsel. In addition to formal service, Defendants also received notice (by mail) of this lawsuit on at least five (5) additional occasions.[1] (*See* Dkts. 14-2, 15-2, 19-2, 21, and 24.) Despite repeated notice of the suit, Defendants continue to strategically ignore this litigation. Their continued refusal to appear and litigate in good faith cannot be seen as anything other than an intentional act.

More importantly, there is clear evidence as to why Defendants opted to ignore this lawsuit. Indeed, as Defendants are no doubt aware, only they are in possession of the class records in this case. As explained above, Plaintiff sought to obtain the fax records from Defendants' telephone service provider to no avail. (Smith Decl. ¶¶ 9, 10.) In response, NetstaffHR confirmed that it does not retain fax transmission records related to its client accounts. (*Id.*) As such, by refusing to appear and engage in discovery, Defendants have disrupted and impeded Plaintiff's ability to prosecute this action on a class basis. (*See* Class

---

[1] Plaintiff will also serve a copy of the instant motion when it is filed. (*See* Certificate of Service, *infra*.)

Certification Order, Dkt. 23, pgs. 5-7.) Absent the class records, Plaintiff has no ability to prosecute any claim for monetary damages on a class basis. Instead, it is left seeking individual damages ($1,500) and a permanent injunction. In short, Defendants actions can only be seen as an intent to disrupt the instant litigation. Accordingly, the Court should find that the Defendants have acted in "bad faith" and issue an Order requiring Defendants to pay Plaintiff's attorneys' fees incurred while prosecuting this action.

Throughout the pendency of this case, Plaintiff has incurred $19,937 in attorneys' fees. (Smith Decl. ¶ 11.) As set forth in the Smith Declaration, Class Counsel's rates are reasonable and have been previously approved by other courts. (*See Id.* ¶ 12. (citing *Gergetz v. Telenav, Inc.*, Case No. 16-cv-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (approving 2018 rates for Patrick Peluso and Taylor Smith of $340 and $225 respectively); *see also Couch v. Southwest Airlines Co.*, 3:15-cv-00367-N (N.D. Tex. 2016) (Couch Dkt. 43) (approving Patrick Peluso's 2016 rate of $330)).

As a final matter, the Court should also award costs. *See Fraternal Ord. of Police Lodge 27 v. City & Cty. of Denver*, No. 18-CV-02620-CMA-NYW, 2021 WL 1115935, at *1 (D. Colo. Mar. 24, 2021) ("The prevailing party in a lawsuit is generally entitled to an award of litigation costs." (citing F.R.C.P. 54(d))); *see also* D.C.COLO.LCivR 54.1. Because Plaintiff is the prevailing party in this litigation, it should be awarded its costs as well. To date, Plaintiff has incurred $659 in costs during the prosecution of this case.

For the foregoing reasons, Plaintiff requests that the Court enter an order requiring a payment of $1,500 to Plaintiff, granting a permanent injunction as outlined above, and awarding Plaintiff its attorneys' fees and costs.

**IV.   CONCLUSION**

Defendants Five Star and Lee had ample notice of this lawsuit and strategically chose not to defend itself. Therefore, Plaintiff respectfully requests that the Court enter default judgment in its favor and award such additional relief as it deems necessary, reasonable, and just.

Dated:  November 12, 2021

**WENDELL H. STONE COMPANY, INC.**, individually and on behalf of all others similarly situated,

*/s/ Taylor T. Smith*
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Stephen A. Klein
sklein@woodrowpeluso.com
**Woodrow & Peluso, LLC**
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Tel: (720) 213-0675
Facsimile: (303) 927-0898

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I, Taylor T. Smith, hereby certify that on November 12, 2021, I served a true and accurate copy of the above titled document by first-class U.S. Mail, postage prepaid, and properly addressed to the following parties:

Five Star Advertising, LLC<br>
6247 El Diente Peak Pl.<br>
Castle Rock, CO 80108

Johnny Lee<br>
6247 El Diente Peak Pl.<br>
Castle Rock, CO 80108

*/s/ Taylor T. Smith*