IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03157-PAB-STV

WENDELL H. STONE COMPANY, INC, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

FIVE STAR ADVERTISING, LLC, and
JOHNNY LEE,

    Defendants.

# ORDER

This matter comes before the Court on Plaintiff's Motion for Default Judgment [Docket No. 32]. The defendants have not entered an appearance or filed a response. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

### A. Factual Background

This case arises out of the receipt of unsolicited facsimile ("fax") advertisements. Plaintiff alleges that defendants sent unsolicited fax transmissions in violation of the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005 (collectively, the "TCPA"), 47 U.S.C. § 227. Docket No. 1 at 2, ¶ 4; 3, ¶ 8. Plaintiff alleges that defendant Johnny Lee ("Mr. Lee"), a natural person residing in Castle Rock, Colorado, is the only registered member of defendant Five Star Advertising, LLC ("Five Star"), a limited liability company ("LLC") with its principal office at 6247 El Diente Peak

Place, Castle Rock, Colorado. *Id.* at 2, ¶ 2; 5, ¶ 28. Plaintiff states that on October 1, 2019, defendants transmitted a fax advertisement to plaintiff. *Id.* at 4, ¶ 18. Plaintiff states that the fax advertised defendants' goods or products, it was part of defendants' work or operations in marketing defendants' goods or products, plaintiff never invited or gave permission to defendants to send the advertisement fax, and the fax did not contain an opt-out provision as required by 47 U.S.C. § 227. *Id.* at 4, ¶¶ 20-21, 23; 5, ¶ 27. Plaintiff states "[o]n information and belief" that defendants faxed the same unsolicited advertisement to 40 other recipients without receiving the recipients' permission or invitation. *Id.* at 5, ¶ 24. Plaintiff states that Mr. Lee has personal oversight of Five Star and the drafting and implementation of the fax advertisements and Five Stars' policies regarding the TCPA. *Id.*, ¶¶ 29-30, 32.

### B. Procedural Background

Neither defendant has made an appearance in this case. On January 29, 2020, the Clerk of Court entered default as to Five Star, Docket No. 17, and on February 5, 2020, the Clerk of Court entered default as to Mr. Lee. Docket No. 20. On April 14, 2020, plaintiff filed a motion to certify the class. Docket No. 21. Plaintiff sought to certify a class consisting of

> [a]ll persons who (1) on or after four years prior to the filing of this action, (2) were sent, by [d]efendants or on [d]efendants' behalf, (3) a telephone facsimile message substantially similar to Exhibit A, (4) from whom [d]efendants claim they obtained prior express permission or invitation to send those faxes in the same manner as [d]efendants claim they obtained prior express consent to fax the [p]laintiff.

*Id.* at 2. The proposed class excluded judicial officers presiding over this action and their family members; defendants, their subsidiaries, parents, successors,

predecessors, and any entity in which defendants or their parents have a controlling interest; defendants' current or former employees, officers and directors; plaintiff's attorneys; persons who opt-out from the class; the legal representatives, successors or assigns of any person who opts-out; and persons whose claims against defendants have been fully adjudicated. Docket No. 1 at 6, ¶ 34. Plaintiff estimated that the number of class members was "in the thousands." *Id*. ¶ 37.

On March 17, 2021, the Court granted in part and denied in part plaintiff's motion for class certification. Docket No. 23 at 16. The Court certified the class under Fed. R. Civ. P. 23(b)(2), but declined to certify the class under Fed. R. Civ. P. 23(b)(3) because the class was not ascertainable. *Id.* at 7. The Court granted plaintiff leave to file an amended motion for class certification under Fed. R. Civ. P. 23(b)(3) within 30 days of March 17, 2021. *Id.* at 17. The Court then granted plaintiff an extension of 120 days in order to conduct discovery. Docket No. 26. Plaintiff, however, did not file an amended motion, and on November 12, 2021, plaintiff filed a motion for default judgment on its TCPA claim. Docket No. 32.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688.1 (4th ed., 2020 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

4

mere conclusions of law." *Id*. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

### III. ANALYSIS

#### A. Personal Jurisdiction

Before addressing the merits of plaintiff's motion for default judgment, the Court must determine whether it has jurisdiction over the defendants. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) ("[A] district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case."). "Plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is determined on the basis of the pleadings and affidavits, that burden may be met by a *prima facie* showing." *Sharpshooter Spectrum Venture, LLC v. Consentino*, No. 09-cv-0150-WDM-KLM, 2011 WL 3159094, at *2 (D. Colo. July 26, 2011) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

5

### 1. Service of Process

Proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the Court lacks personal jurisdiction over defendants. *Okla. Radio Assocs. v. Fed. Deposit Ins. Co.*, 969 F.2d 940, 943 (10th Cir. 1992).

On December 13, 2019, the Court docketed executed summons on Mr. Lee and Five Star. Docket Nos. 12-13. On December 12, 2019, a deputy from the Douglas Count Sheriff's Office served the summons and complaint upon Mr. Lee personally and upon Five Star by serving Mr. Lee, its registered agent. *Id.* Accordingly, the Court finds that service was proper.

### 2. Due Process

"The requirement that a court have personal jurisdiction flows from the Due Process Clause. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (brackets, ellipses, internal quotation marks, and citation omitted). In a federal question case "in which the federal statute at issue does not authorize nationwide service of process, personal jurisdiction is determined according to the law of the forum state." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent. The personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal case citations omitted).

The Court has personal jurisdiction over residents of the state of Colorado because the District of Colorado encompasses the entire state. *See Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1032 (D. Colo. 2015) ("As Defendant resides in the District of Colorado, the Court has personal jurisdiction over him."). Plaintiff alleges that Mr. Lee, a natural person residing in Castle Rock, Colorado, is the only registered member of defendant Five Star, a Colorado LLC with its principal office in Castle Rock, Colorado. Docket No. 1 at 2, ¶ 2; 5, ¶ 28. This is sufficient to satisfy the Court that it may exercise personal jurisdiction over defendants. *See Metro. Life Ins. Co. v. Johnson*, No. 14-cv-00811-KLM, 2015 WL 1945398, at *3 (D. Colo. Apr. 29, 2015) (finding that the court may exercise personal jurisdiction over individuals alleged in the complaint to reside in Colorado); *United States v. Stock Asylum LLC*, No. 14-cv-01979-WJM-NYW, 2015 WL 638200, at *2 (D. Colo. Feb. 13, 2015) ("The Court further finds that it has personal jurisdiction over Defendants, as Stock Asylum is a Colorado limited liability corporation with its principal place of business in Boulder, Colorado and Defendant Rovtar resides in Boulder, Colorado. (Compl. ¶¶ 3–4.)"). The Court finds that it has personal jurisdiction over both defendants.

### B. TCPA Claim

#### 1. Default Judgment

Plaintiff brings one claim for relief against defendants for violating the TCPA on behalf of itself and the class. Docket No. 1. at 9-13, ¶¶ 43-57. After an entry of default, "the well-pleaded allegations in the complaint are deemed admitted." *Shaw v. Vircurex*, No. 18-cv-00067-PAB-SKC, 2019 WL 2636271, at *2 (D. Colo. Feb. 21, 2019) (citing Wright & Miller, *supra*, § 2688). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Wright & Miller, *supra*, § 2688.1.

As relevant here, the TCPA prohibits the use of any device to send, to a telephone facsimile machine, an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The statute does, however, provide an exception to that general prohibition on unsolicited fax advertisements, if: (a) the sender has an established business relationship with the recipient; (b) the sender obtained the recipient's fax number through voluntary communication or a directory; and (c) the unsolicited fax includes an opt-out notice meeting certain statutory requirements. 47 U.S.C. § 227(b)(1)(C). In short, then, under certain circumstances a business may send an "unsolicited advertisement" by fax to a third party, but that fax must include the statutorily-mandated opt-out language. *See id*. § 227(b)(2)(D) (providing that such opt-out language must be "clear and conspicuous" and "on the first page of the unsolicited advertisement," it must state that the recipient may opt out from future unsolicited advertisements, and must include a "cost-free mechanism" to send an opt-out request to the sender of the

8

unsolicited advertisement).  The statute provides a private right of action to enjoin a violation of the TCPA, to recover the larger of the actual monetary loss or $500 for each such violation, or both.  *Id.* § 227(b)(3).  A court may award treble damages if it finds that the defendant wilfully or knowingly violated the Act.  *Id.*

Plaintiff alleges that defendants' faxes advertise defendants' apparel, which are commercial goods.  Docket No. 1 at 10, ¶¶ 46-47.  Plaintiff never gave prior express consent to receive faxes from defendants and had no prior relationship with defendants.  *Id.* at 4, ¶ 23.  Plaintiff also alleges that the faxes do not contain an opt-out provision that complies with the TCPA.  *Id.* at 11-13, ¶¶ 55-57.  Plaintiff has alleged sufficient facts to demonstrate a violation of § 227(b)(1)(C).  *See Mims v. Arrow Fin. Servs, LLC*, 565 U.S. 368, 373 (2012) ("[T]he [TCPA] proscribes sending unsolicited advertisements to fax machines."); *Katz v. Dale Pharm. & Surgical, Inc.*, 2022 WL 850528, at *4 (E.D.N.Y. Mar. 2, 2022) (finding opt-out notice insufficient because, *inter alia*, the sender must have a prior business relationship with the recipient in order to be exempt under the TCPA), *report and recommendation adopted*, 2022 WL 843838 (Mar. 22, 2022).

The Court finds that plaintiff is entitled to default judgment on its claim that the fax it received violated the TCPA.  The Court additionally finds that both defendants are liable for this violation.  "Individual officers of an entity violating the TCPA can be personally liable for their direct participation."  *Doyle v. JTT Funding, Inc.*, 2019 WL 13037025, at *9 (C.D. Cal. Dec. 2, 2019) (collecting cases).  Liability is appropriate where the individual "had direct, personal participation in or personally authorized the conduct found to have violated the statute."  *Id.* (quoting *Rinky Dink, Inc. v. Elec. Merch.*

9

*Sys., Inc.*, 2014 WL 12103245, at *6 (W.D. Wash. Nov. 4, 2014)).  The complaint alleges that Mr. Lee is the only registered member of Five Star, has personal oversight and control over its day-to-day operations, and "[o]n information an belief . . . oversaw and controlled the drafting of the Five Star Fax . . . [and] was directly involved in the transmission of the faxes to Plaintiff and the Class."  Docket No. 1 at 5, ¶¶ 28-32.  This is sufficient to allege that he personally participated in the violation.  Accordingly, the Court finds that both defendants violated the TCPA.  The Court next turns to remedies.

### 2.  *Injunction*

Plaintiff seeks the following permanent injunction:

[1.] Defendants, and their employees, agents, representatives, contractors, and affiliates acting on behalf of Defendants, shall not send or cause to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, any facsimile advertisement to either Plaintiff or any class member as defined in the Court's March 17, 2021 Order regarding class certification (dkt. 23), unless Defendants possess prior written invitation or permission from the fax recipient.

[2.] Defendants, and their employees, agents, representatives, contractors, and affiliates acting on behalf of Defendants, shall not send or cause to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, to any telephone facsimile machine any facsimile advertisement unless it contains the following opt-out notice clearly and conspicuously placed on the first page: "You have the right to request not to receive future faxes from Five Star Advertising, LLC, by calling [insert toll-free domestic telephone number] or sending a fax to [insert toll-free domestic fax number] at any time.  Your opt-out request must include the fax number(s) to which You request that no future fax advertisements should be sent.  Five Star Advertising, LLC's failure to comply with a valid opt-out request within 30-days is unlawful."

[3.] In the event that Defendant Lee sends or causes to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, any fax advertisement on behalf of any other entity, partnership, limited liability company, corporation, sole proprietorship, or any other legal structure, Lee is hereby required to include the aforementioned opt-out notice on any fax advertisements.  The notice

> shall, however, include the correct name of any entity that is sending the advertisement.
>
> [4.] Defendants are also enjoined from entering, forming, organizing, or reorganizing into any partnership, corporation, sole proprietorship, or any other legal structure for the purpose of avoiding compliance with the terms of the Order and Judgment in this case.

Docket No. 32 at 12-13.

"To obtain a permanent injunction, a plaintiff must show: '(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.'" *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (quoting *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)).

Plaintiff is entitled to default judgment against defendants, and accordingly meets the element of actual success on the merits. *See Marche Design, LLC v. TwinPro Int'l Holdings Ltd.*, 2009 WL 37386, at *3 (D. Kan. Jan. 6, 2009) (finding success on the merits prong met where plaintiff was entitled to default judgment on the claim). The Court finds that plaintiff will be irreparably harmed unless defendants are barred from, *inter alia*, sending other faxes to it that violate the TCPA. The injury from the harm outweighs any interest defendants have in violating the TCPA, and there is no harm to the public interest from the issuance of a permanent injunction. The Court will enter a permanent injunction. The Court however will make the following changes to the proposed injunction: (a) in paragraph one, the Court will remove the need for the invitation or permission to be written, and (b) in paragraphs two and three, the Court will insert the word "unsolicited" before fax advertisements*.*

### *3. Damages*

While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true. *Magic Carpet Ski Lifts, Inc. v. S&A Co., LTD*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *6 (D. Colo. June 8, 2015), *report and recommendation adopted*, 2015 WL 4162586 (D. Colo. July 9, 2015). Instead, the court must hold a hearing on the damages claimed before entering default judgment, unless "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

A plaintiff may recover $500 in damages for each violation of the TCPA. 47 U.S.C. § 227(b)(3)(B). Plaintiff seeks $1,500 in damages based on the receipt of one fax in violation of the TCPA due to its willful and knowing nature. Docket No. 32 at 8-9.

There is a "split of authority" as to the meaning of willfully or knowingly, "with some courts holding that it means that the defendant should have known that its conduct might violate the statute, and others holding that it instead only requires that the defendant's conduct be volitional, i.e. it intended to dial the telephone number at issue." *Warnick v. Dish Network LLC*, No. 12-cv-01952-WYD-MEH, 2014 WL 12537066, at *16 (D. Colo. Sept. 30, 2014) (quotation omitted). This District has held that a plaintiff must only show that a defendant's actions were intentional—not that it was aware it was violating the statute. *Id.*; *see also Lee v. Loandepot.com, LLC*, No. 14-cv-01084-EFM, 2016 WL 4382786, at *8 (D. Kan. Aug. 17, 2016) ("This Court chooses to follow the direction of the [Federal Communications Commission] and those courts who have found that the plaintiff need not prove that the defendant had knowledge of the TCPA's

provisions to establish a knowing or willful violation.").

The Court, exercising its discretion, declines to award treble damages. Apart from the complaint alleging that faxes were sent willfully and knowingly, there is no evidence in the record to support such a finding. *Cf.* Wright & Miller, *supra*, § 2688.1 ("Even after default, however, . . . a party in default does not admit conclusions of law."); *Georgopulous v. PPM Capital, Inc.*, No. 19-cv-000347-DDD-STV, 2019 WL 6065617, at *10 (D. Colo. Oct. 21, 2019) ("The Court adopts that approach here and finds that a defendant acts willfully or intentionally when it continues to call or text after the plaintiff requests that the communications stop."), *report and recommendation adopted*, 2019 WL 6053333 (D. Colo. Nov. 15, 2019); *Warman v. Law Office of Daniel M. Slane*, 2017 WL 971196, at *6 (W.D.N.Y. Mar. 13, 2017) (awarding treble damages under the TCPA for calls made after plaintiff "asked that the calls stop"); *Warnick*, 2014 WL 12537066, at *17 (noting that for plaintiff to prove defendants acted knowingly and willfully, plaintiff must "show that [Defendants] knew that Plaintiff did not consent to the phone calls" (quotation omitted)). The Court will award plaintiff $500 in statutory damages.

### *4. Attorney's Fees and Costs*

Plaintiff seeks $19,937 in attorneys' fees and $659 in costs. Docket No. 32 at 15. The "longstanding 'American Rule,' adopted by the Supreme Court in *Arcambel v. Wiseman*, 3 U.S. 306, 3 Dall. 306 (1796), generally bars prevailing parties from recovering attorneys' fees in the absence of a statute or enforceable contract providing for such an award." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997). In the absence of such a statute or contract, attorney fees are recoverable only upon a showing that the losing party acted in bad faith. *See id.* at 765, 769. Plaintiff

acknowledges that litigants typically pay their own fees, but argues that the Court should assess attorneys' fees against defendants because they have acted in bad faith by refusing to appear. Docket No. 32 at 13-14. Plaintiff does not allege a statutory basis for attorneys' fees. *See id.*

Plaintiff points to defendants' failure to appear as the basis for bad faith. *Id.* This, however, is insufficient to show subjective bad faith that would warrant an exception to the American Rule. Accordingly, the Court will deny the portion of the motion seeking attorneys' fees.

Plaintiff also seeks an award of costs. Federal Rule of Civil Procedure 54(d) provides that costs, other than attorneys' fees, should be awarded to a prevailing party. The Court concludes that plaintiff shall have its costs upon a filing of a bill of costs pursuant to D.C.COLO.LCivR 54.1.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Default Judgment [Docket No. 32] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that default judgment shall enter in favor of plaintiff and against defendants on plaintiff's claim for a violation of 47 U.S.C. § 227. It is further

**ORDERED** that the following permanent injunction is entered:

1. Defendants, and their employees, agents, representatives, contractors, and affiliates acting on behalf of Defendants, shall not send or cause to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, any facsimile advertisement to either Plaintiff or any class member as defined in the Court's March 17, 2021 Order regarding class certification [Docket No. 23], unless Defendants possess a prior invitation or permission from the fax recipient.

2.  Defendants, and their employees, agents, representatives, contractors, and affiliates acting on behalf of Defendants, shall not send or cause to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, to any telephone facsimile machine any unsolicited facsimile advertisement unless it contains the following opt-out notice clearly and conspicuously placed on the first page: "You have the right to request not to receive future faxes from Five Star Advertising, LLC, by calling [insert toll-free domestic telephone number] or sending a fax to [insert toll-free domestic fax number] at any time.  Your opt-out request must include the fax number(s) to which You request that no future fax advertisements should be sent.  Five Star Advertising, LLC's failure to comply with a valid opt-out request within 30-days is unlawful."

3.  In the event that Defendant Lee sends or causes to be sent, directly or indirectly, by any telephone facsimile machine, computer or other electronic device, any unsolicited fax advertisement on behalf of any other entity, partnership, limited liability company, corporation, sole proprietorship, or any other legal structure, Lee is hereby required to include the aforementioned opt-out notice on any unsolicited fax advertisements.  The notice shall, however, include the correct name of any entity that is sending the advertisement.

4.  Defendants are also enjoined from entering, forming, organizing, or reorganizing into any partnership, corporation, sole proprietorship, or any other legal structure for the purpose of avoiding compliance with the terms of the Order and Judgment in this case.

It is further

    **ORDERED** that plaintiff is awarded $500 in statutory damages.  It is further

    **ORDERED** that plaintiff shall have its costs upon a filing of a bill of costs

pursuant to D.C.COLO.LCivR 54.1.  It is further

    **ORDERED** that this case is closed.

    DATED September 7, 2022.

                              BY THE COURT:

                              PHILIP A. BRIMMER
                              Chief United States District Judge